J. E. McMILLAN HARDWARE Co. v. Ross.

No. 178.    Opinion Filed September 14, 1909.

(104 Pac. 343.)

1.   REPLEVIN—Issues, Proof and Variance.   When the petition
     in a replevin suit alleges that the plaintiff is entitled to the
     possession of certain personal property by reason of a special
     interest therein, evidenced by certain notes and a chattel mort-
     gage, and the proof shows that, if he is entitled to the posses-
     sion thereof at all, it is by reason of a certain other agreement
     with the defendant, and timely objection is made to such
     variance between the pleadings, and the proof, it is fatal to the
     recovery of the plaintiff.

2.   REPLEVIN—Damages to Defendant.   Damages to a defendant
     in a replevin suit are to compensate him for the loss he has
     sustained by being wrongfully deprived of his property, and
     their award involves a prior finding that he is entitled to its
     possession, and he is never entitled to damages unless he shows
     himself entitled to the possession of the property at the time
     the suit was commenced.

(Syllabus by the Court.)

*Error from Johnston County Court; M. L. Garrett, Special Judge.*

Replevin by the J. E. McMillan Hardware Company against
W. H. Ross.   Judgment for defendant, and plaintiff brings er-
ror.   Reversed and remanded.

*E. D. Slough* and *J. O. Minter,* for plaintiff in error.

*Wm. L. Lawrence, Chas. S. Stephens,* and *Joe S. Ratliff,*
for defendant in error.

KANE, C. J.   This was an action in replevin, commenced by
the plaintiff in error, plaintiff below, against the defendant in
error, defendant below, to recover possession of certain personal
property.   The ground upon which plaintiff claimed the right to
possession was that the defendant was indebted to him on certain
written instruments which were due and unpaid at the time of
the commencement of the action, and that, by the terms of said
written instruments and a chattel mortgage given to secure some

of them, he was entitled to possession of the property therein described upon default of payment of the sums due.

The defendant admitted the execution of the written instruments, and that by their terms the plaintiff was entitled to the possession of the property, but that, after the written instruments had become due and payable, the plaintiff had instituted a suit in the United States commissioner's court on the same notes and mortgage on which this action is brought, whereupon the parties to this suit entered into a compromise whereby it was agreed that the plaintiff would refrain from prosecuting any suit against the defendant, and that, in consideration of plaintiff's promise to refrain from said suit, the defendant agreed that the plaintiff should have immediate custody of the crops, live stock, and other property mortgaged and described in said written instruments until the crops could be gathered and marketed and said notes paid off, the defendant agreeing to pay plaintiff or its agent for gathering said crop; that in compliance with said agreement the plaintiff placed its agent in charge of said crop and all of the other mortgaged property, and said agent, by the help of defendant, picked and marketed five bales of cotton, part of said crop and realized therefrom after deducting the expenses of picking and marketing same, $231.90, which amount plaintiff received to apply on defendant's indebtedness to it, and thereby all of defendant's indebtedness to plaintiff was satisfied, except $55; that, had plaintiff kept the terms of said compromise and remained in possession of the mortgaged property, it could have gathered enough to have fully paid off said note; that plaintiff wholly violated said compromise and withdrew its agent, Charlie Johnston, and wrongfully brought this action. The defendant further alleged that, by being deprived of said property, he suffered damages in the sum of $160, for which, together with the return of the property, or the value thereof, he prays judgment.

By way of reply, the plaintiff alleged that it filed its affidavit and bond as required by law, and an order of replevin was

issued out of the United States commissioner's court at Madill, and that said order was served by an officer appointed by the court for said purpose, and said property was delivered to plaintiff by virtue of said order, and that Charlie Johnston was placed in charge as the custodian; that, when a portion of the crop was gathered, the said gathering was interrupted by a rainy spell, when Johnston returned to Madill, until such time as weather would permit for a continuation of the gathering of said crop, but, when the said Johnston returned to resume the gathering of said crop, the said defendant refused to let him resume possession of the said property, and refused to permit him to remain on the premies or furnish him board, and as the commissioner's court had become dormant, and its process dead, the plaintiff was forced to sue out a writ of replevin in this court, to get possession of the said property.

On the issues thus joined the cause was tried to a jury, which returned a verdict in favor of the defendant in the sum of $30 damages, and finding that he was entitled to the possession of the property taken or the value thereof. From the judgment entered on the verdict the plaintiff appealed to this court.

That there was some sort of an agreement between the plaintiff and the defendant in relation to the compromise there can be no doubt. The reply admits it, and Mr. J. E. McMillan, one of the firm of the J. E. McMillan Hardware Company, testified in relation to it as follows:

"Q. You filed suit in the commissioner's court, executed affidavit, and everything? A. Yes. Q. How long after that before you saw the defendant? A. I think we served the papers one evening, and— Q. Well, go ahead and state what was done? A. He came in and wanted to know if there could not be some way of fixing it up, and I told him the way he was doing about the security I didn't feel like losing it, and couldn't let it go over for just what security there was. He said he couldn't give me any more because he only had two mules, and they were mortgaged. Q. Well, what was done with reference to taking charge of the crop? A. Well, I sent Mr. Johnston down to take charge, of it, and I understood they were to work along together, and

did, I think. He brought in a report for cotton picking and I paid it. Q. Well, go ahead, and state how long Mr. Johnston stayed and how much was gathered while he was there. A. I think they got out five bales of cotton. I think they sold two in the seed and probably ginned three. I have their statement of everything. * * * Q. Did you make an agreement that Charley Johnston was to go down there? A. Yes. Q. And Charley went? A. Yes. * * * Q. Well, did you send him back down there? A. Yes. Q. Did you and Ross agree on what should be paid Johnston? A. Yes."

It is to be presumed that the jury found from the evidence that the defendant would be entitled to the return of the property upon the theory that the compromise pleaded as a defense was established by the evidence. Under the pleadings, the evidence, and the general findings of the jury, the plaintiff was not entitled to possession of the property on the notes and mortgage that formed the basis of his action, as disclosed by his petition, so his suit on that ground must fall, unless the petition is amended to conform to the facts as they actually exist.

It seems to be well settled that when the petition in a replevin suit alleges that the plaintiff is entitled to the possession of certain personal property by reason of a special interest therein evidenced by certain notes and a chattel mortgage, and the proof shows that, if he is entitled to the possession thereof at all, it is by reason of a certain other agreement with the defendant, and timely objection is made to such variance between the pleadings and the proof, it is fatal to the recovery of the plaintiff, unless the petition is amended to conform to the facts proven. On the other hand, we are of the opinion that no foundation was laid by the evidence upon which to base a judgment for damages against him. Upon either theory of the case he was entitled to the possession of the property until his debt was fully paid, and it is admitted that at the time the action was commenced there was still a balance due him of $55, and it does not appear that this sum was ever tendered or satisfied in any way, except by the allowance of damages in

the replevin case. Damages to a defendant in a replevin suit are to compensate him for the loss he has sustained by being wrongfully deprived of his property, and their award involves a prior finding that he is entitled to its possession, and he is never entitled to damages unless he shows himself entitled to the possession of the property at the time the suit was commenced. Under these circumstances, it was error to enter a judgment in favor of the defendant for damages and the return of the property. According to his own statement, he is not entitled to the return of the property until he has paid or tendered this $55 or whatever was due from him to the plaintiff.

The judgment for damages against the plaintiff is set aside, as is also that part of the judgment of the court adjudging the right of possession to the property involved herein to be in the defendant. The balance due the plaintiff from the defendant did not seem to be an issue in the proceedings below, and so that question will not be affected by this decision. The cause is therefore remanded, with directions to take such further proceedings not inconsistent with this opinion, as may be necessary to the final determination of the case, each party to pay half the costs accruing in this court.

All the Justices concur.